McKinney J.,
delivered the opinion of the court.
The error relied upon in this ease, is in the order of the circuit court striking out the amended replication of the plaintiff to the defendant’s third plea.
The action is trespass vi et anni-, for the seizure and sale contrary to law, of a “certain bay stud-horse,” the property of the plaintiff. The third plea of the defendant atte mpts to justify the seizure and sale by virtue of a justice’s execution, founded upon a judgment rendered against the plaintiff, Tip-ton, on the 8th of January, 1846. By virtue of which execution said horse was levied on and sold on the 81st of August, 1848.
The replication in question avers, that at and before the time of the seizure of said horse, the plaintiff was the “head of a family,” that he resided in Sevier county, and that he was *26 then and there engaged .in agriculture; and was,, by law, entitled to a horse, mule, or yoke of oxen ; and that at the time of the seizure of said stud-horse, he owned no other horse, nor was he then the owner of a mule cr yoke of oxen. It is further averred, that the cause of action for which said judgment was recovered, accrued since the passage of the act of 1842, chap. 44.
These are the substantial averments of the replication; and the inquiry is, do they constitute a sufficient answer to the matter of the foregoing plea. We think they do.
The supposed defect in the replication is, that it does not aver that the horse was a :t farm horse.” The determination of this question will depend upon the construction of the act of 1842, chap. 44; the judgment under and by virtue of which the horse was seized, having been rendered prior to the passage of the act of 1846, chap. 169.
By the act of 1833, chap. 80, sec. 1, among other things “ exempt from execution,” is “ one farm horse.” This exemption however is expressly restricted in favor of persons “ engaged in agriculture.”
But the act of 1842, which was passed to amend and enlarge the provisions of the former acts upon this subject, declares “that in addition to the articles heretofore exempt from execution, there shall be exempt also one other bed and furniture,” &c.; and furthermore, “ that the provisions of this act, securing property to heads of families, shall be construed and taken to extend to and embrace the heads of each and every family, of whatever vocation or calling.
This is a very comprehensive provision, explicit and unqualified in its terms. All the various chattels and articles of property, specifically enumerated in the preceding acts, as “ exempt from execution,” are, by this act, secured to each and every head of a family, irrespective of his or her vocation or calling.
*27 But it is said, the only description of horse exempted from execution, is a “ fai*m horse.” This construction of the law is wholly untenable, and in direct opposition to the obvious spirit and policy of the act of 1842, and would indeed make entirely nugatory the express declaration of the statute, that its provisions shall be construed and taken to extend to, and embrace, the head of each and every family, of whatever vocation or calling-.
Aware that in various other vocations the use of a horse might be indispensable, as well as in. agriculture, the heads of families were, in this respect, intended to stand upon the same footing. And the only question, as it seems to us, that can arise upon the construction of the broad and unqualified terms of this statute, is, whether any head of a family is entitled to this exemption, whose “ vocation or calling ” does not properly and necessarily require the use of a horse in order to its proper pursuit, a question upon which we intend to express no opinion at present.
It follows, upon our construction of the law, that it is not required that it should have been averred in the replication in question, that the horse alleged to have been wrongfully seized, was a farm horse.
But again : If none other than a “ farm horse,” were by law exempt from execution, we think the replication would be sufficient in the present case, because, inasmuch as a “ stud-horse ” may be used for farming purposes, as well perhaps as any other description of horse beast, it would more properly be a matter of evidence upon the trial, than of pleading, to show that the horse was of the description protected by law.
The judgment of the circuit court is erroneous, and will be reversed.